1
2
3
4
5
6
7
8
9
10
11
12
13
14

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MICHAEL RAY HOGAN,                         )
                                           )
              Petitioner,                  )          2:97-cv-00927-JCM-PAL
                                           )
vs.                                        )
                                           )          **ORDER**
RENEE BAKER, *et al.*,                     )
                                           )
              Respondents.                 )
                                           )
_____/

15    On May 18, 2012, this court entered an order lifting the stay and reopening proceedings in

16  this case.  ECF No. 130.  Petitioner Hogan filed his fourth amended petition on October 18, 2012.

17  ECF No. 139.  On March 7, 2013, respondents filed a motion to dismiss various claims in the

18  petition on the grounds that such claims were either unexhausted, procedurally defaulted, or failed to

19  state a cognizable claim for relief.  ECF No. 150.  In relation to his opposition to the motion, Hogan

20  has filed a motion for an evidentiary hearing.  ECF No. 157.  This order disposes of both motions.

21    I. *Background*

22    In May of 1985, Hogan was convicted, by a jury, in the Eighth Judicial District, Clark County

23  of first-degree murder and attempted murder.  In the penalty phase of the trial, the jury found two

24  aggravating circumstances:  Hogan was previously convicted of a violent felony, and he knowingly

25  created a great risk of death to more than one person.  The jury found no mitigating circumstances

26  sufficient to outweigh the aggravating circumstances and imposed a sentence of death.

On June 18, 1985, the court entered a judgment of conviction and one week later, on June 25, 1985, the State filed a supplemental judgment of conviction which specifically spelled out Hogan's sentence.  Hogan appealed.  On February 6, 1987, the Nevada Supreme Court issued an order affirming Hogan's conviction and sentence – *Hogan v. Warden*, 732 P.2d 422 (Nev. 1987).  The United States Supreme Court denied certiorari on October 5, 1987.

On November 9, 1987, Hogan filed a pro se petition for post-conviction relief in the Eighth Judicial District and requested appointment of counsel.  The trial court appointed attorney Christopher Maglaras to represent Hogan in those proceedings.  On March 10, 1988, the trial court dismissed the petition.  Hogan appealed.

After the district court denied his motion to withdraw as counsel, Maglaras represented Hogan on appeal.  On December 21, 1988, the Nevada Supreme Court dismissed the appeal.

On January 9, 1989, Hogan filed a pro se petition for writ of habeas corpus in this court and, thereafter, requested appointment of counsel.   After the brief appointment of the Federal Public Defender's office, retained counsel Annette Quintana undertook representation of Hogan.

Hogan filed a first amended petition on April 28, 1989, then a second amended petition on March 9, 1990.  On September 7, 1990, pursuant to Hogan's motion, the court granted a stay of the proceedings to allow Hogan to exhaust claims in state court.

With Quintana as counsel, Hogan filed, on November 20, 1990, a petition for writ of habeas corpus in the Seventh Judicial District, White Pine County.  When that petition was dismissed on April 6, 1992, Hogan appealed.  The Nevada Supreme Court affirmed the lower court's dismissal of the petition on September 29, 1993.  *Hogan v Warden*, 860 P.2d 710 (Nev. 1993).

In October of 1993, the Nevada Supreme Court entered an order removing Quintana from the case and appointing the Nevada Appellate and Postconviction Project to represent Hogan for any remaining appellate proceedings.  Michael Pescetta, then with the appellate project, filed a petition for rehearing on Hogan's behalf.  On May 3, 1996, that petition was denied by the Nevada Supreme

Court.  A petition for writ of certiorari was denied by the United States Supreme Court on October 15, 1996.

In May of 1996, Glynn Cartledge assumed representation of Hogan in his federal capital habeas corpus proceedings.  In July 1997, this court appointed Richard Cornell as second counsel. On March 2, 2001, Hogan filed a third amended petition for writ of habeas corpus in this action. Pursuant to a stipulation between the parties, this court entered an order on December 30, 2003, staying these proceedings to allow Hogan the opportunity to exhaust the unexhausted claims in the third amended federal petition.

On February 2, 2004, Hogan initiated exhaustion proceedings in the Eighth Judicial District Court.  On August 26, 2004, the state court granted an evidentiary hearing on one issue in Hogan's state petition.  The State filed a petition with the Nevada Supreme Court, asking that court to prevent the evidentiary hearing.  The Nevada Supreme Court denied the State's petition on November 15, 2004.  An evidentiary hearing was held on August 5, 2005.

On November 2, 2005, the state district court denied the petition.  Hogan appealed.  The Nevada Supreme Court entered an order affirming the denial on November 15, 2006.  The court denied rehearing on May 31, 2007, and denied rehearing en banc on July 26, 2007.

Although counsel had been ordered in the 2003 stay order to notify this court within 30 days of the conclusion of state court proceedings, counsel failed to do so.  Instead, in January of 2008, counsel moved to withdraw from representing Hogan.   On February 22, 2008, this court appointed the Federal Public Defender's office to represent Hogan.

On June 27, 2008, Hogan moved this court to continue the stay of proceedings.  With no opposition from the State, this court entered an order on August 14, 2008, extending the stay of federal proceedings to allow Hogan to present unexhausted claims to the state courts.

On September 10, 2008, Hogan filed a state petition for writ of habeas corpus in the Eighth Judicial District Court.  Without holding an evidentiary hearing, the state court entered an order

1   dismissing the petition on May 19, 2009.  Hogan appealed.  The Nevada Supreme Court affirmed the

2   denial of relief in an order entered on January 20, 2012.  Remittitur issued on March 8, 2012.

3         On May 18, 2012, this court vacated the stay and reopened the federal proceedings.  On

4   October 18, 2012, Hogan filed a fourth amended petition for writ habeas corpus, which is the subject

5   of the motion to dismiss addressed in this order.

6         II. *Exhaustion*

7         A habeas petitioner must exhaust his claims by presenting them to the state's highest court

8   either through a direct appeal or collateral proceedings before a federal court will consider the merits

9   of those claims.  *Smith v. Baldwin*, 510 F.3d 1127, 1137–38 (9th Cir.2007) (citing *Rose v. Lundy*,

10  455 U.S. 509, 515 (1982)).  "As a general rule, a petitioner satisfies the exhaustion requirement by

11  fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the

12  state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of

13  legal error.'"  *Casey v. Moore*, 386 F.3d 896, 915–16 (9th Cir.2004) (quoting *Vasquez v. Hillery*, 474

14  U.S. 254, 257 (1986)).  If a habeas petitioner failed to present his claims to the state courts in a

15  procedural context in which the merits of the claims were considered, the claims have not been fairly

16  presented to the state courts and, therefore, are not eligible for federal habeas review.  *Id*. at 916–18

17  (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

18        Respondents argue that several of Hogan's claims are unexhausted because, although he may

19  have raised them the in the state district court, he neglected to present them to the Nevada Supreme

20  Court.[1]  Hogan disagrees, arguing that he fairly presented all the claims to the state supreme court in

21  his fourth and final state post conviction proceeding either by asking that the claims be considered on

22

23     [1]    According to the respondents, the claims that fit into this category are Claims Two(A), Two(B)
24  (except as to alleged inability to form intent for murder in the guilt phase), Two(C) (except as to witness
    Havenstrite), Two(D), Two(G), Two(H), Two(I), Two(J), Two(K), Two(M), Two(N), Two(O), Three,
    Four, Nine, Ten (except as to Dr. Green's testimony and threats of violence), Eleven (except for equal
25  and exact justice, reasonable doubt and non-sympathy instructions), Fifteen, Sixteen, Twenty, Twenty-
    four, Twenty-six (except as to claims that were exhausted), and Twenty-seven.

26

1   the merits and attaching a copy of his petition containing those claims to this opening brief or by

2   directly addressing nearly every claim in the brief itself.  He also argues that most of the claims at

3   issue were also addressed in earlier appeals.

4           Respondents do not dispute that the petition Hogan filed in the state district court in his

5   fourth state post-conviction proceeding contained all the claims included in his fourth amended

6   petition in this court.  The state district court dismissed all of those claims on procedural grounds.

7   ECF No. 144, p. 78-79.[2]  In his brief on appeal to the Nevada Supreme Court, Hogan argued the

8   merits of several of his constitutional claims, but primarily did so as grounds to overcome his

9   procedural default.  ECF No. 143-5, p. 147-254.  Under these circumstances, the claims that Hogan

10  raised in his fourth state habeas action are exhausted, but, as explained below, they are also

11  procedurally defaulted.  Procedurally defaulted claims are exhausted inasmuch as there is no further

12  remedy available in state court with respect to such claims.  *See Cooper v. Neven*, 641 F.3d 322, 327

13  (9th Cir. 2011) (noting that if the state court will not hear a petitioner's claims on their merits because

14  of failure to comply with a state procedural rule, the claims are "technically exhausted" and

15  procedurally defaulted).

16          Hogan argues that, aside from whether he fairly presented them to the state court, Claims

17  Eleven, Fifteen, Sixteen, and Twenty-four were exhausted pursuant to Nevada's mandatory review

18  process under Nev. Rev. Stat. § 177.055.  In order to find any claims exhausted by virtue of the

19  Nevada Supreme Court's review under Nev. Rev. Stat. § 177.055, this court must be satisfied that

20  such review encompassed the specific factual and a federal law grounds advanced by the petitioner

21  in his federal petition.  *See Comer v. Schriro*,  463 F.3d 934, 954-56 (9th Cir. 2006) (examining

22  whether petitioner's federal habeas claims were impliedly exhausted under the Arizona Supreme

23  Court's independent review process).  In allowing implied exhaustion in *Comer*, the court of appeals

24  noted that, pursuant to Arizona's statutes and case law, the Arizona Supreme Court "examines the

25  _____

26  [2]        Citations to page numbers for electronically filed documents are based on the ECF pagination.

1   entire record, particularly the sentencing hearing, to determine if any procedural errors occurred or

2   other arbitrary factors influenced the sentencing court's decision to impose the death sentence," and

3   that the court "is clearly conscious of its duty to respect the dictates of the Eighth and Fourteenth

4   Amendments and to ensure that the death penalty is not imposed in an arbitrary and capricious

5   fashion." *Id*. at 955.  In addition, the court of appeals held that only claims that are "clearly

6   encompassed within Arizona's independent review" and  "readily apparent from the record" will be

7   deemed impliedly exhausted. *Id*. at 956.

8           Here, neither the statute itself nor Nevada case law obligates the Nevada Supreme Court to

9   apply federal law standards in conducting its review under Nev. Rev. Stat. § 177.055. *Sechrest v.*

10  *Ignacio*, 943 F.Supp. 1245, 1250 (D.Nev. 1996).  Moreover, Hogan has not shown that any of the

11  claims at issue are "clearly encompassed" within the scope of Nev. Rev. Stat. § 177.055 and "readily

12  apparent" in the record reviewed by the Nevada Supreme Court.  Thus, none of the claims were

13  exhausted on direct appeal by operation of the mandatory review statute.

14          III. *Procedural Default*

15          Procedural default is an affirmative defense. *Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir.

16  2003).  As a general rule, "[a] federal habeas court will not review a claim rejected by a state court

17  'if the decision of [the state] court rests on a state law ground that is independent of the federal

18  question and adequate to support the judgment.'" *Walker v. Martin*, 131 S.Ct. 1120, 1127 (2011)

19  (quoting *Beard v. Kindler*, 558 U.S. 53, 55 (2009)); *see also  Maples v. Thomas*, 132 S.Ct. 912, 922

20  (2012); *Greenway v. Schriro*, 653 F.3d 790, 797 (9th Cir. 2011).  "The state-law ground may be a

21  substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the

22  merits." *Walker*, 131 S.Ct. at 1127.  In order for a state procedural rule to be found independent, the

23  state law basis for the decision must not be interwoven with federal law. *Cooper*, 641 F.3d at 332;

24  *Bennett*, 322 F.3d at 581; *LaCrosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001); *Park v. California*,

25  202 F.3d 1146, 1151 (9th Cir. 2000).  To be deemed adequate, the rule must be well established and

26

6

1  consistently applied.  *Walker*, 131 S.Ct. at 1128; *Beard*, 558 U.S. at 59; *Greenway*, 653 F.3d at

2  797–98.  Even if the state rule is independent and adequate, the claims may be reviewed by the

3  federal court if the petitioner can show:  (1) cause for the default and actual prejudice as a result of

4  the alleged violation of federal law; or (2) that failure to consider the claims will result in a

5  fundamental miscarriage of justice.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v.*

6  *Thompson*, 501 U.S. 722, 749-50 (1991)); *see also  Maples*, 132 S.Ct. at 922.

7          Respondents argue that claims that were not presented until Hogan's third or fourth state

8  post-conviction proceeding are now barred from federal review by the procedural default doctrine.

9  According to respondents, the claims that fall into that category are Claims One, Two(B) (to the

10  extent that it argues the inability to form the intent to commit murder), Two(E), Two(F), Two(L),

11  Four (to the extent it alleges actual innocence of the death penalty specifically), Five, Six, Seven,

12  Eight, Eleven (as to equal and exact justice and reasonable doubt), Twelve, Thirteen, Fourteen,

13  Seventeen, Eighteen, Nineteen, Twenty-one, Twenty-two, Twenty-three, Twenty-five, Twenty-six

14  (to the extent of claims that were exhausted), and the claims respondents identified as unexhausted

15  (see footnote 1., above).

16          In affirming the lower court's denial of Hogan's third state petition, the Nevada Supreme

17  Court noted that Hogan's petition had been filed 20 years after his conviction had become final and

18  concluded that is was untimely under Nev. Rev. Stat. § 34.726(1).  ECF No. 142-5, p. 3.  The court

19  also held that the petition was also successive under Nev. Rev. Stat. § 34.810(2).  Likewise, in

20  affirming the lower court's denial of Hogan's fourth state petition, the Nevada Supreme Court

21  concluded as follows:

22          Because Hogan filed his petition over 21 years after the remittitur issued in his
        direct appeal, the petition was untimely under NRS 34.726(1).  The petition was also
23      successive pursuant to NRS 34.810(2).  The petition was therefore procedurally
        barred absent a demonstration of good cause and prejudice.  NRS 34.726(1); NRS
24      34.810(3).

25  ECF No. 144, p. 79.

26

7

1    Under Nev. Rev. Stat. § 34.726(1), a petition is untimely if filed later than one year after the

2    entry of the judgment of conviction or, if an appeal has been taken from the judgment, within one

3    year after the Nevada Supreme Court issues its remittitur.  Respondents assert this bar as applied to

4    Hogan's third and fourth state post-conviction petitions constitutes an independent and adequate

5    state procedural ground for denying relief.

6                        A.  Independence of the procedural bar.

7    Hogan advances several reasons why his claims should not be barred from federal court

8    review under the procedural default doctrine.  First, he argues that the Nevada Supreme Court's

9    rulings on Claims Two(B), Two(E), Two(F), Four, Five, Seven, and Twenty-six were on the merits

10   or, at least, interwoven with federal law.  With regard to Claims Two(B), Two(E), Two(F), Four, and

11   Five, he contends that the Nevada Supreme Court considered the merits of these claims in his fourth

12   state post-conviction proceeding in the context of addressing whether failure to consider the claims

13   would result in a fundamental miscarriage of justice due to Hogan's actual innocence.[3]

14   This latter argument fails because it is not apparent that the Nevada Supreme Court

15   independently applied the applicable federal law analysis to Claims Two(B), Two(E), Two(F), Four,

16   and Five.  *Cf. Cooper*, 641 F.3d at 332 (holding that a state court decision was not independent of

17   federal law because the state court's  "cause-and-prejudice" inquiry "dovetails exactly with the

18   merits of the federal claim").  Instead, the Nevada Supreme Court applied the state law standard on

19   actual innocence to determine that Hogan could not overcome the procedural bars.  ECF No. 144, p.

20   82-88.  Thus, the state court's rejection of these claims was independent of federal law for the

21   purposes of the procedural default doctrine.  *See Nitschke v. Belleque*, 680 F.3d 1105, 1111–12 (9th

22   Cir. 2012) (holding that the Oregon Court of Appeals' application of the the Oregon "plain error"

23   rule to petitioner's federal law claim was independent of federal law); *Moran v. McDaniel*, 80 F.3d

---

[3]  Under Nevada law, a petitioner may bypass procedural bars by showing that the bar would result in a fundamental miscarriage of justice.  *Pellegrini v. State*, 34 P.3d 519, 537 (Nev. 2001).

1261, 1268–70 (9th Cir.1996) (holding a Nevada state rule independent where the court only discussed the merits of the claim "strictly for the purpose of demonstrating that [Moran] cannot overcome his procedural defaults by a showing of cause and prejudice").

With regard to Claim Seven, Hogan maintains that the Nevada Supreme Court addressed the merits of this claim in ruling upon his direct appeal.  Claim Seven alleges violations of Hogan's constitutional rights arising from ineffective assistance of counsel and trial court error during the voir dire.  ECF No. 139, p. 154-66.  Hogan did raise an argument on direct appeal based on alleged deficiencies in the trial court's voir dire, however, the legal theories and factual grounds for relief were substantially different than those contained in Claim Seven.  ECF No. 143-4, p. 70-83.  Moreover, the Nevada Supreme Court relied primarily on state law in rejecting the appellate claim.  *Hogan*, 732 P.2d at 423.  Thus, the Nevada Supreme Court's rejection on Ground Seven was not based on, or interwoven with, federal law.

Claim Twenty-six alleges that Hogan is entitled to habeas relief based on the cumulative effect of the constitutional violations alleged in his petition.  This court agrees with Hogan that a cumulative error claim cannot be procedurally defaulted to the extent that this court will nonetheless consider the cumulative impact of constitutional errors properly brought before it.  *See Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) (stating that "even if no single error were prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless be so prejudicial as to require reversal.' ") (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996)).

B. Adequacy of the procedural bar.

Hogan argues that Nev. Rev. Stat. § 34.726 does not bar federal review because it is not consistently applied by the Nevada Supreme Court.  In *Bennett*, the court of appeals announced a burden-shifting test for analyzing adequacy.  322 F.3d at 585-86.  Under *Bennett*, the State carries the initial burden of pleading "the existence of an independent and adequate state procedural ground as an affirmative defense."  *Id*. at 586.  The burden then shifts to the petitioner "to place that defense

1    in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the

2    inadequacy of the state procedure, including citation to authority demonstrating inconsistent

3    application of the rule."  *Id*.  If the petitioner meets this burden, "the ultimate burden" of proving the

4    adequacy of the procedural rule rests with the State, which must demonstrate "that the state

5    procedural rule has been regularly and consistently applied in habeas actions."  *Id*.; *see also King v.

6    Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006).

7         Here, respondents meet their initial burden under *Bennett* by asserting that the Nevada

8    Supreme Court's application of Nev. Rev. Stat. § 34.726 constituted an independent and adequate

9    state procedural ground for denying relief.  The statute was enacted in 1991 and applies to petitions

10   filed on or after January 1, 1993.  *See Pellegrini v. State*, 34 P.3d 519, 525 (Nev. 2001).[4]  Since then,

11   the Ninth Circuit Court of Appeals has held that Nevada's timeliness rule was adequate to support a

12   procedural bar to federal review as of 1993 (*Loveland v. Hatcher*, 231 F.3d 640, 642-43 (9th Cir.

13   2000)) and as of 1996 (*Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996)).

14        In response, Hogan cites to *Rippo v. State*, 146 P.3d 279 (Nev. 2006), *Middleton v. Warden*,

15   98 P.3d 694 (Nev. 2004), and a small sample of other cases as Nevada cases that, according to him,

16   demonstrate the inconsistent application of the procedural rule post-*Moran*.  In *Rippo*, the court

17   addressed whether a certain penalty phase jury instruction regarding the consideration of mitigating

18   circumstances was improper.  146 P.3d at 285.  Ostensibly, the Nevada Supreme Court raised the

19   issue *sua sponte* long after the time limit imposed by Nev. Rev. Stat. § 34.726 had expired.

20        Placed in context, however, the state supreme court's consideration of the issue has little, if

21   any, bearing on whether § 34.726 is consistently applied.   The state petition for writ of habeas

22   corpus that gave rise to the appeal in *Rippo* was, in fact, filed in a timely manner.  *Id*. at 282.  The

23   state district court had already denied Rippo's petition when the Nevada Supreme Court announced

24

25   [4]  The court in *Pellegrini* held that petitioners, like Hogan, whose convictions became final prior to
     January 1, 1993, were allowed one year from that date to file a timely petition.  34 P.3d at 529.

26

the rule in *McConnell v. State*, 102 P.3d 606 (Nev. 2004).[5]  The Nevada Supreme Court found good cause for Rippo raising a *McConnell*-based claim on appeal, as opposed to returning to the lower court, because the legal basis for the claim "was not available at the time he pursued his habeas petition in the district court" and because the claim "present[ed] questions of law that [did] not require factual determinations outside the record." *Rippo*, 146 P.3d. at 283 (internal citations omitted).

The suggestion that the Nevada Supreme Court disregarded Nev. Rev. Stat. § 34.726 in raising the jury instruction issue *sua sponte* after the one-year time limit is misleading because the issue was ancillary to the court's adjudication of Rippo's *McConnell* claim.  The court addressed the issue, not as a freestanding ground for relief, but because of the issue's potential impact on the court's harmless error analysis.  *See id*. at 285, 287-88.  Thus, rather than arbitrarily overlooking statutory default rules, the Nevada Supreme Court merely considered the impact of the defective jury instruction in the process of ruling upon a habeas claim (i.e., Rippo's *McConnell* claim) that had been raised in a manner consistent with Nevada law.

In *Middleton*, the Nevada Supreme Court merely gave the petitioner another opportunity to litigate his post-conviction petition with a new attorney after finding that his existing attorney had "repeatedly violated this court's orders and procedural deadlines" and submitted work product that was "wholly substandard and unacceptable." 98 P.3d at 696-98.  The court's exercise of discretion in isolated cases does not necessarily render the rule inadequate to support a state decision in other cases. *Walker*, 131 S.Ct. at 1130 (explaining that a rule is not automatically inadequate "upon a showing of seeming inconsistencies" and that state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule").

Likewise, the four additional Nevada cases Hogan cites are not sufficient to carry his burden

---

[5]     In *McConnell*, the Nevada Supreme Court ruled that it is "impermissible under the United States and Nevada Constitutions to base an aggravating circumstance in a capital prosecution on the felony upon which a felony murder is predicated."  102 P.3d at 624.

of demonstrating inconsistent application of the rule.  In one case, *Hill v. State*, 953 P.2d 1077 (Nev. 1998), the Nevada Supreme Court addressed a claim on the merits that was not raised in the lower court.  953 P.2d at 1084.  Making no reference to the timeliness of the claim, the state supreme court reasoned that "because this issue raises a claim of constitutional dimension which, if true, might invalidate Hill's death sentence and 'the record is sufficiently developed to provide an adequate basis for review,' we will address it."  *Id.* (citation omitted).  This court notes that, although Hill apparently raised the claim on appeal more than one year after his conviction became final, his petition in lower court was timely filed.  *Id.* at 1081.

As for the three unpublished opinions – *Jones v. McDaniel, et al.*, Case No. 39091, 12/19/02; *Milligan v. Warden*, Case No. 37845, 7/24/02; and *Farmer v. State*, Case No. 29120, 11/20/97, the Nevada Supreme Court in the first two relied upon Nev. Rev. Stat. § 34.726 to affirm the lower court's dismissal of the petition on procedural grounds.  The court's discussion of the merits of petitioner's claims in both cases was limited to addressing whether the default might be excused due to cause and prejudice or a fundamental miscarriage of justice.  In *Farmer*, the court did not invoke Nev. Rev. Stat. § 34.726, but relied instead on the successive petition bar under Nev. Rev. Stat. § 34.810(2) and (3) to bar the petitioner's claims.  While the court may have been able to apply Nev. Rev. Stat. § 34.726, the choice of one procedural bar to foreclose relief does not undermine the adequacy of others bars that may have been imposed.

Hogan also contends that the Nevada Supreme Court's procedural bar of his *Kazalyn-Polk* claim is inadequate to bar federal review.  Hogan is presumably referring to Claim One(A) of his petition wherein he challenges the premeditation instruction given at this trial, which was condoned by the Nevada Supreme Court in *Kazalyn v. State*, 825 P.2d 578 (Nev. 1992), and later held to be unconstitutional in *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007).  Hogan argues that, in other cases filed within a year of the *Polk* decision, the Nevada Supreme Court considered the merits of the same claim.

1        The recent decision of the Ninth Circuit Court of Appeals in *Babb v. Lozowsky*, 719 F.3d

2   1019 (9th Cir. 2013), abrogating *Polk*, leaves little, if any, viability to Hogan's constitutional

3   challenge to the *Kazalyn* instruction.  Beyond that, in the cases Hogan cites to support his claim of

4   disparate treatment (ECF No. 156, p. 42-43), the Nevada Supreme Court uniformly rejected the

5   petitioner's claim that the default of his *Polk*-based claim should be excused.  The Nevada Supreme

6   Court's failure to specifically address the similar argument in Hogan's case did not render the default

7   ruling inadequate.

8           C.  *Martinez v. Ryan*.

9        Hogan argues that, pursuant to *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), and *Trevino v.*

10  *Thaler*, 133 S.Ct. 1911 (2013), he can show cause and prejudice sufficient to excuse the procedural

11  default of his claims because his post-conviction counsel was ineffective.

12        In *Martinez*, the Court held that, in collateral proceedings that provide the first occasion to

13  raise a claim of ineffective assistance at trial, ineffective assistance of post-conviction counsel in that

14  proceeding may establish cause for a prisoner's procedural default of such a claim.  *Martinez*, 132

15  S.Ct. at 1315.  The Court stressed that its holding was a "narrow exception" to the rule in *Coleman v.*

16  *Thompson*, 501 U.S. 722 (1991), that "an attorney's ignorance or inadvertence in a postconviction

17  proceeding does not qualify as cause to excuse a procedural default."  *Martinez*, 132 S.Ct. at 1315.  It

18  is clear from the opinion that the exception does not extend beyond ineffective assistance of trial

19  counsel claims.  *See id.* at 1320.  In *Trevino*, the Court incrementally expanded the scope of *Martinez*

20  by holding that it applies where "[the] state procedural framework, by reason of its design and

21  operation, makes it highly unlikely in a typical case that a defendant will have a meaningful

22  opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal."  *Trevino*, 133

23  S.Ct. at 1921.

24        In *Martinez* and *Trevino*, the petitioner's procedural default was based on respective state

25  court rules barring successive petitions such that the petitioner's procedural default was complete

26

13

1    when counsel in the initial-review collateral proceeding failed to raise certain claims.  *See Martinez*,

2    132 S.Ct. at 1314; *Trevino*, 133 S.Ct. at 1916.  The procedural defaults at issue in this case are based

3    on based on the time limitation imposed by Nev. Rev. Stat. § 34.726.  The relevant procedural

4    defaults occurred because Hogan's third and fourth state post-conviction proceedings were brought

5    17 and 21 years, respectively, after his direct appeal ended in 1987.

6         Assuming the attorney who represented Hogan in his first state habeas action was, in fact,

7    ineffective, as Hogan claims, his representation concluded in 1988 with the Nevada Supreme Court's

8    decision to affirm the lower court's denial of his first habeas petition.  From early 1989 forward,

9    Hogan has been represented by retained or appointed counsel.  In short, there is an insufficient causal

10   connection between the alleged ineffective assistance of Hogan's first post-conviction counsel and

11   the procedural default at issue in this case.  Ineffective assistance of counsel in Hogan's first state

12   habeas action does not function as cause for the procedural default of claims raised in Hogan's third

13   and fourth state habeas actions.

14                  D.  Cause and prejudice in relation to Hogan's lethal injection claim.

15        For Claim Twenty-Five, wherein he alleges that Nevada's death sentence by means of lethal

16   injection violates the Eight Amendment, Hogan argues that the State's suppression of execution

17   protocols until April of 2006 and the absence of a state forum to litigate the claim provide cause

18   sufficient to excuse procedural default of the claim.  These arguments are without merit.

19        In *Stewart v. LaGrand*, 526 U.S. 115 (1999) the Supreme Court held that the petitioner

20   lacked cause for failing to raise a claim that execution by lethal gas violated the Eighth Amendment

21   because the issue had been widely debated for years and several states were reconsidering the use of

22   that method of execution at the time of petitioner's default.  526 U.S. at 119-20.  Similarly,

23   constitutional challenges to execution by lethal injection were common long before Hogan first

24   presented the claim to the Nevada courts in 2008.  *See*, *e.g.*, *Poland v. Stewart*, 169 F.3d 573, 590

25   (9th Cir. 1999).  And, even though Claim Twenty-five is partially premised on the allegedly

26

14

1   suppressed protocols, that fact does not justify Hogan's failure to bring a lethal injection claim prior

2   to 2008.  *See Williams v. Stewart*, 441 F.3d 1030, 1060-61 (9th Cir. 2006) (per curiam) (finding lethal

3   injection claim procedurally defaulted where Arizona prisoner failed to seek evidence after

4   introduction of lethal injection as mode of execution in 1992 but before filing a post-conviction

5   petition in 1994).  Likewise, Hogan's argument that constitutional challenges to lethal injection are

6   not cognizable in state court does not excuse him from failing to raise the claim earlier.  *See Roberts*

7   *v. Arave*, 847 F.2d 528, 530 (9th Cir. 1988) ("[T]he apparent futility of presenting claims to state

8   courts does not constitute cause for procedural default.").

9                    E.  Conclusions regarding procedural default.

10          The court concludes that all the claims that Hogan did not exhaust until in his third and

11   fourth state habeas actions are barred by the doctrine of procedural default.  Having reviewed the

12   relevant state court record, the court finds that Claim Two(H), Claim Ten (as it relates to Dr. Green's

13   statements and prior threats of violence), Claim Eleven(C and D), and Claim Twenty-seven were

14   exhausted prior to Hogan's third state habeas action.  Thus, those claims are not procedurally

15   defaulted.

16          In summary, Claims One, Two (except for Claim Two(H)), Three, Four, Five, Six, Seven,

17   Eight, Nine, Ten (except as to Dr. Green's testimony and threats of violence), Eleven (except for

18   Eleven(C and D)), Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen,

19   Twenty, Twenty-one, Twenty-two, Twenty-three, Twenty-four, and Twenty-five are barred by the

20   doctrine of procedural default

21          IV.  *Failure to State a Claim*

22          Respondents argue that Claims One(A), Four, Five, Seven, Fifteen, Twenty-four, and

23   Twenty-seven are not cognizable in this federal habeas action.  With the exception of Claim Twenty-

24   seven, much of respondents' argument in this regard goes to the merits of those claims.  The court

25   declines, therefore, to address respondents' arguments going to the cognizability of those claims.

26

                                          15

This ruling is without prejudice to respondents reasserting such arguments at any appropriate time, if they deem it necessary to do so.

In Claim Twenty-seven, Hogan seeks relief based on the alleged ineffectiveness of his post-conviction counsel.  By federal statute, Hogan is precluded from relying on the ineffectiveness of his post-conviction attorney as a ground for relief in cases brought under 28 U.S.C. § 2254.  28 U.S.C. § 2254(i).  As such, Claim Twenty-seven is  not cognizable in this proceeding.

V.  *Motion for Evidentiary Hearing*

Hogan seeks an evidentiary hearing in order to develop the factual record relating to respondents' motion to dismiss.  Specifically, Hogan wants the court to hold an evidentiary hearing to allow him to demonstrate (1) cause and prejudice sufficient to overcome any procedural default with regard to individual claims; and (2) that Nevada's rules of procedural default are not clearly established, independent of federal law, or adequate to bar federal habeas review.

Because he seeks a hearing on procedural issues, the restrictions imposed by 28 U.S.C. § 2254(e)(2) do not necessarily apply to Hogan's request.  Even so, he must allege facts which, if true, would entitle him to relief, in order to be entitled to an evidentiary hearing.  *See*, *e.g.*, *Mendoza v. Carey*, 449 F.3d 1065, 1071 (9th Cir. 2006) (holding that petitioner should have been granted a hearing by the district court because he alleged facts that, if true, may warrant equitable tolling).

As discussed above, Hogan's cause and prejudice argument is premised (except with regard to Claim Twenty-five) on alleged ineffective assistance of post-conviction counsel.  Because of the lack of a sufficient causal connection between the performance of Hogan's counsel in his first state post-conviction proceeding and Hogan's procedural default several years later, the default would not be excused even if Hogan could prove that counsel provided ineffective assistance.  Similarly, this court's rejection of Hogan's cause and prejudice argument in relation to Claim Twenty-five is on legal, not factual, grounds.  Thus, an evidentiary hearing would not assist the court in determining whether Hogan can establish cause and prejudice to excuse his procedural defaults.

16

1    As to the other purported purpose for Hogan's motion – i.e., to challenge the adequacy and

2    independence of the state procedural rules asserted by the State, Hogan gives no hint as to the type

3    evidence he would present at a hearing on this issue.

4    For the foregoing reasons, Hogan's motion for an evidentiary hearing shall be denied.

5    **IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 150) is

6    GRANTED in part and DENIED in part.  For the reasons set forth above, Claims One, Two (except

7    for Claim Two(H)), Three, Four, Five, Six, Seven, Eight, Nine, Ten (except as to Dr. Green's

8    testimony and threats of violence), Eleven (except for Eleven(C and D)), Twelve, Thirteen, Fourteen,

9    Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty, Twenty-one, Twenty-two, Twenty-three,

10   Twenty-four, Twenty-five, and Twenty-seven are DISMISSED.

11   **IT IS FURTHER ORDERED** that petitioner's motion for evidentiary hearing (ECF No.

12   157) is DENIED.

13   **IT IS FURTHER ORDERED** that respondents shall have **forty-five (45) days** from the

14   date on which this order is entered within which to file their answer to petitioner's remaining claims.

15   In all other respects, the scheduling of this matter is governed by the scheduling order entered on

16   October 23, 2012 (ECF No. 146).

17   DATED:  March 19, 2014.

18

19

20   _____
     UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

17