UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MICHAEL RAY HOGAN, | Case No. 2:97-cv-00927-JCM-PAL |
| Petitioner, | ORDER |
| v. | |
| TIMOTHY FILSON,[1] *et al.*, | |
| Respondents. | |

Before the court for a decision on the merits is an application for a writ of habeas corpus filed by Michael Ray Hogan, a Nevada prisoner sentenced to death. ECF No. 139.

I. FACTUAL AND PROCEDURAL BACKGROUND

After a jury trial in May of 1985, Hogan was convicted in the Eighth Judicial District, Clark County, of first-degree murder and attempted murder. The Nevada Supreme Court would later recount the facts underlying Hogan's convictions as follows:

> In the afternoon of November 19, 1984, after a weekend marked by quarrels and death threats, appellant Michael Hogan shot and killed his female companion, Heidi Hinkley. Hogan also fired five bullets into the victim's teenage daughter, who nevertheless survived and was able to testify at trial.

*Hogan v. State*, 732 P.2d 422, 423 (Nev. 1987).

In the penalty phase of Hogan's trial, the jury found two aggravating circumstances: (1)

---

[1] Timothy Filson is automatically substituted for Renee Baker as the Warden of Ely State Prison. See Fed. R. Civ. P. 25(d).

1

Hogan was previously convicted of a felony involving the use or threat of violence – i.e., an Iowa manslaughter conviction, and (2) he knowingly created a great risk of death to more than one person.  The jury found no mitigating circumstances sufficient to outweigh the aggravating circumstances and imposed a sentence of death.

On June 18, 1985, the state district court entered a judgment of conviction and one week later, on June 25, 1985, entered a supplemental judgment of conviction which specifically spelled out Hogan's sentence.  Hogan appealed.  On February 6, 1987, the Nevada Supreme Court issued an order affirming Hogan's conviction and sentence.  The United States Supreme Court denied certiorari on October 5, 1987.

On November 9, 1987, Hogan filed a pro se petition for post-conviction relief in the Eighth Judicial District and requested appointment of counsel.  The trial court appointed attorney Christopher Maglaras to represent Hogan in those proceedings.  On March 10, 1988, the trial court dismissed the petition.  Hogan appealed.

After the district court denied his motion to withdraw as counsel, Maglaras represented Hogan on appeal.  On December 21, 1988, the Nevada Supreme Court dismissed the appeal.

On January 9, 1989, Hogan filed a pro se petition for writ of habeas corpus in this court and, thereafter, requested appointment of counsel.   After the brief appointment of the Federal Public Defender's office, retained counsel Annette Quintana undertook representation of Hogan.

Hogan filed a first amended petition on April 28, 1989, then a second amended petition on March 9, 1990.  On September 7, 1990, pursuant to Hogan's motion, the court granted a stay of the proceedings to allow Hogan to exhaust claims in state court.

With Quintana as counsel, Hogan filed, on November 20, 1990, a petition for writ of habeas corpus in the Seventh Judicial District, White Pine County.  When that petition was dismissed on April 6, 1992, Hogan appealed.  On September 29, 1993, the Nevada Supreme Court issued a decision affirming the lower court's dismissal of the petition

In October of 1993, the Nevada Supreme Court entered an order removing Quintana from the case and appointing the Nevada Appellate and Postconviction Project to represent Hogan for any remaining appellate proceedings.  Michael Pescetta, then with the appellate project, filed a

petition for rehearing on Hogan's behalf.  On May 3, 1996, that petition was denied by the Nevada Supreme Court.  A petition for writ of certiorari was denied by the United States Supreme Court on October 15, 1996.

In August of 1997, this court reopened federal habeas proceedings and assigned this case a new case number (the current one).  Represented by Glynn Cartledge and Richard Cornell, Hogan filed a third amended federal petition for writ of habeas corpus on March 2, 2001.  Pursuant to a stipulation between the parties, this court entered an order on December 30, 2003, staying these proceedings to allow Hogan the opportunity to exhaust the unexhausted claims in the third amended petition.

On February 2, 2004, Hogan initiated exhaustion proceedings in the Eighth Judicial District Court.  On August 26, 2004, the state court granted an evidentiary hearing on one issue in Hogan's state petition.  The State filed a petition with the Nevada Supreme Court, asking that court to prevent the evidentiary hearing.  The Nevada Supreme Court denied the State's petition on November 15, 2004.  An evidentiary hearing was held on August 5, 2005.

On November 2, 2005, the state district court denied the petition.  Hogan appealed.  The Nevada Supreme Court entered an order affirming the denial on November 15, 2006.  The court denied rehearing on May 31, 2007, and denied rehearing en banc on July 26, 2007.

Although counsel had been ordered in the 2003 stay order to notify this court within 30 days of the conclusion of state court proceedings, counsel failed to do so.  Instead, in January of 2008, counsel moved to withdraw from representing Hogan.   On February 22, 2008, this court appointed the Federal Public Defender's office to represent Hogan.

On June 27, 2008, Hogan moved this court to continue the stay of proceedings.  With no opposition from the State, this court entered an order on August 14, 2008, extending the stay of federal proceedings to allow Hogan to present unexhausted claims to the state courts.

On September 10, 2008, Hogan filed a state petition for writ of habeas corpus in the Eighth Judicial District Court.  Without holding an evidentiary hearing, the state court entered an order dismissing the petition on May 19, 2009.  Hogan appealed.  The Nevada Supreme Court affirmed the denial of relief in an order entered on January 20, 2012.  Remittitur issued on March

8, 2012.

On May 18, 2012, this court vacated the stay and reopened the federal proceedings. On October 18, 2012, Hogan filed a fourth amended petition for writ habeas corpus. On March 19, 2014, pursuant to respondents' motion to dismiss, this court dismissed several of Hogan's claims as procedurally defaulted.

On September 28, 2015, this court entered an order granting Hogan's motion for evidentiary hearing with respect to his remaining ineffective assistance of counsel claim (Claim Two(H)). In that order, the court directed Hogan to identify what, if any, evidence he intended to present at an evidentiary hearing beyond the materials he had already submitted herein. In accordance with Rule 7(c) of the Rules Governing Habeas Corpus Cases Under Section 2254, the court also gave respondents the opportunity to admit or deny the correctness of the materials Hogan submitted.

Hogan responded by identifying (and providing copies of) 71 exhibits in support of Claim Two(H). Respondents did not specifically admit or deny the correctness of any those exhibits. Thus, the court has considered them as part of the record in deciding Claim Two(H).[2]

## II.  STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] As for the need to take live testimony, Hogan identified only three witnesses he would call at an evidentiary hearing. ECF No. 196, p. 6. The record contains a deposition, a declaration, or a report from all three of those witnesses. ECF Nos. 191-2 and 191-10 (p. 39-106). The court has given due consideration to those exhibits in considering Claim Two(H). For reasons stated in the discussion of Claim Two(H), below, testimony from these proposed witnesses would not assist the court in deciding the claim.

4

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9ᵗʰ Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual

determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."). Because *de novo* review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

III. ANALYSIS OF CLAIMS

**Claim Two(H)**

In Claim Two(H), Hogan alleges that his constitutional right to effective assistance of counsel was violated because trial counsel failed to adequately investigate the legality and underlying factual circumstances of the Iowa manslaughter conviction that the State used as an aggravating circumstance. According to Hogan, effective counsel could have successfully challenged the State's use of the Iowa conviction on multiple grounds. For one, he claims the Iowa conviction was invalid under Iowa law and federal law. In addition, he claims that the conviction did not involve the use or threat of violence because Iowa law at the time did not distinguish between voluntary and involuntary manslaughter and, in addition, there was available evidence that the victim's death was accidental.

*Strickland v. Washington*, 466 U.S. 668 (1984), provides the relevant federal law in determining whether counsel's assistance failed to meet constitutional standards. Under *Strickland*, a habeas petitioner must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance was prejudicial. *Strickland*, 466 U.S. 668, 687-88 (1984).

Hogan presented Claim Two(H) in his second state post-conviction proceeding. In that proceeding, the state district court dismissed his petition on procedural grounds, concluding that the Nevada Supreme Court had already determined that Hogan received effective assistance of trial and appellate counsel and that his petition was a successive petition under Nev. Rev. Stat. § 34.810. ECF No. 142-4, p. 181-85. On appeal, Hogan argued that lower court's imposition of the procedural bar was erroneous because he is "actually innocent" of the two aggravating circumstances on which his death sentence is based and that the law of the case doctrine did not

apply because he was presenting a different factual and legal issue. ECF No. 143-4, p. 96-129.

In support of this argument, he explained that, subsequent to the dismissal of his prior state post-conviction proceeding, he sought relief from the manslaughter conviction in the Iowa courts. *Id*. In that proceeding, an assistant county attorney representing the State of Iowa had stipulated that Hogan's guilty plea to the manslaughter charge was unconstitutional and violated Iowa law.[3] Even so, the Iowa Supreme Court determined that Hogan's challenge to the conviction was untimely and rejected it on that basis. *Hogan v. State*, 454 N.W.2d 360, 361 (Iowa 1990).[4]

The Nevada Supreme Court determined that Hogan's claim that his guilty plea was defective failed because the Iowa Supreme Court, in denying Hogan's challenge as untimely, "found no factual basis for relieving Hogan of his felony conviction for manslaughter and there is no basis for presuming that the Iowa court ignored constitutional grounds for granting such relief." *Hogan v. Warden, Ely State Prison*, 860 P.2d 710, 713 (Nev. 1993). The Nevada Supreme Court also noted, in a footnote, that it had previously held that the Iowa plea canvass met the requirements of *Boykin v. Alabama*, 395 U.S. 238 (1969), and had rejected Hogan's contention that his guilty plea was "constitutionally infirm." *Hogan*, 860 P.2d at 713 n.5 (citing *Hogan v. State*, 732 P.2d 422, 424 n. 1 (Nev. 1987).

---

[3] The stipulation includes the following passage:

> That on or about January 25, 1971, [Hogan], then the Defendant in Black Hawk County Case No. 151319, entered a plea of guilty to the charge of manslaughter. That said plea was unconstitutional in violation of Iowa law as follows:
>
> a. That the Defendant was not provided with adequate assistance of counsel in regards to the rights waived and the sentence to be received through a plea of guilty, nor the effect of said plea.
>
> b. That the Court did not comply with the then existing Iowa Law as stated in <u>State v. Sisco</u>, 169 N.W.2d 542 (Iowa 1969).

ECF No. 191-8, p. 130.

[4] The Eighth Circuit Court of Appeals determined that Hogan's federal habeas action attacking the conviction failed because he was no longer "in custody" for the purposes of 28 U.S.C. § 2254 and, in addition, a federal court sitting in Iowa lacked in personam jurisdiction to entertain his habeas petition because neither he nor his Nevada custodian were located in Iowa. *Hogan v. State of Iowa*, 952 F.2d 224, 225 (8th Cir. 1991).

As to whether the State had proved that the manslaughter conviction involved the use or threat of violence, the Nevada Supreme Court stated:

> Hogan insists that irrespective of the constitutionality of his Iowa conviction, there was no evidentiary basis for finding that his crime involved the use or threat of violence on the person of the victim. Hogan is wrong. The record reflects that before the district court allowed evidence of the Iowa conviction to be introduced as an aggravating circumstance, the State provided the court with a transcript of the Iowa plea proceeding that conclusively demonstrated that Hogan resorted to violence in the commission of his crime.

*Hogan*, 860 P.2d at 713.

And, although it determined that Hogan had not overcome the procedural default, the Nevada Supreme Court addressed Hogan's ineffective assistance of counsel claim:

> Hogan's attempt to revisit the issue of ineffective assistance of counsel at the trial and appellate levels must also fail. We have previously determined, and it is now the law of the case, that Hogan's trial and appellate counsel were clearly effective and that the criteria for relief established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), have not been satisfied. The primary gravamen of Hogan's ineffective assistance of counsel claim relates to what he considers the failure to investigate the constitutional validity of his Iowa conviction. We have revisited the Iowa conviction in the instant case and have concluded from the evidence of record that any additional investigation of the circumstances of that conviction by defense counsel would have been unavailing. Hogan's contention is without merit.

*Hogan*, 860 P.2d at 716.

This decision overlooked an important component of Hogan's ineffective assistance of counsel claim. The Iowa Supreme Court's rejection of Hogan's attempt to set aside his guilty plea was based entirely on a determination that he had failed to overcome Iowa's three-year time bar on petitions for post-conviction relief. *Hogan*, 454 N.W.2d at 361. Neither the Iowa Supreme Court, nor the Nevada Supreme Court in relying upon the Iowa decision, addressed whether Hogan's guilty plea was invalid under Iowa law.

Hogan's ineffective assistance of counsel (IAC) claim is premised, in large part, on trial counsel's failure to *timely* challenge Hogan's manslaughter conviction in the Iowa courts. While perhaps not dispositive on the issue, the stipulation of the county attorney establishes at least a reasonable likelihood that such a challenge would have been successful, which, in turn, would have precluded the State of Nevada from using the conviction as an aggravating circumstance to support the death penalty. The Nevada Supreme Court's failure to recognize or address this

8

point constituted an unreasonable application of the *Strickland* standard. Because Hogan has met

the § 2254(d) requirement with respect to Claim Two(H), this court must conduct a *de novo*

review of the claim. *See Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is

now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that,

if there is such error, we must decide the habeas petition by considering de novo the

constitutional issues raised.").[5]

     As noted, Hogan's ineffective assistance of counsel claim premised on trial counsel's

failure to investigate and challenge the State's use of the Iowa conviction as an aggravating

circumstance is multifaceted. Hogan contends that trial counsel's performance was deficient due

to the following errors or omissions: (1) counsel failed to cite to controlling U.S. Supreme Court

authority in moving to strike the aggravating circumstance in the Nevada trial court, (2) counsel

failed to timely challenge the conviction in the Iowa courts, (3) counsel failed to challenge the

conviction on the ground that it was not a crime of violence under Nevada law, and (4) counsel

failed to investigate the facts underlying the conviction.[6]

### a. Failure to adequately challenge the Iowa guilty plea in the Nevada trial court.

     The day before the penalty phase was to begin, Hogan's trial counsel filed a motion to

strike the Iowa conviction as an aggravating circumstance, arguing that Hogan's guilty plea in

that case was "constitutionally defective." ECF No. 191-7, p. 29-39. In the brief supporting the

motion, counsel argued that the Iowa state court record failed to affirmatively demonstrate that

Hogan entered the plea "knowingly and understandingly." *Id.* In particular, counsel noted in the

---

[5] In its order granting Hogan's motion for evidentiary hearing, this court also faulted the Nevada Supreme Court for failing to address, as part of its analysis of Hogan's ineffective assistance claim, the fact that, at the time Hogan entered his guilty plea, Iowa law did not distinguish between voluntary and involuntary manslaughter. ECF No. 184, p. 7-8. For reasons discussed below, however, the court now concludes that Hogan was not prejudiced by counsel's failure to raise this issue in challenging the Iowa conviction as an aggravating circumstance. Accordingly, the Nevada Supreme Court 's failure to specifically address it was not unreasonable for the purposes of § 2254(d).

[6] Marcus Cooper and George Franzen, with the Clark County Public Defender's Office (CCPDO), served as Hogan's trial counsel. Included in the record before this court are the depositions of both counsel, both taken on May 2, 2000. ECF No. 191-10, P. 1-106. Hogan has also submitted a declaration from Cooper, dated April 1, 2016. ECF No. 191-2, p. 54-59.

brief, the record failed to establish that Hogan had been notified of the elements of manslaughter or that he made factual admissions that would satisfy the elements. *Id.*[7] While the brief did not cite to a U.S. Supreme Court case, it relied heavily on a Nevada case, *Scott v. State*, 630 P.2d 257 (Nev. 1981), that cited to *Boykin* for the relevant holding. *See Scott*, 630 P.2d at 258 (noting that the record "does not disclose that defendant's plea of guilty was entered 'voluntarily and understandingly.' *See Boykin*, [395 U.S. at 244]").

In oral argument on the motion, defense counsel argued that the Iowa conviction was constitutionally defective under Nevada Supreme Court decisions interpreting the United States Constitution and the Nevada Constitution. ECF No. 191-8, p. 7. The trial judge denied the motion from the bench, finding that the transcript demonstrated the guilty plea was not defective. *Id.*, p. 9-10.

In addressing the validity of the Iowa guilty plea in Hogan's direct appeal, the Nevada Supreme Court held as follows:

> Hogan was convicted of manslaughter in 1971, pursuant to a guilty plea in an Iowa prosecution. He now alleges that the Iowa court did not tell him the elements of that offense. There is no requirement that it do so; all that is necessary is that the accused actually be aware of the nature of the offense. It is proper to presume that counsel has explained the elements of the crime to the accused, *Henderson v. Morgan,* 426 U.S. 637, 647, 96 S.Ct. 2253, 2258–59, 49 L.Ed.2d 108 (1976); *see also Bryant v. State,* 102 Nev. 268, 721 P.2d 364 (1986). Hogan has done nothing to rebut that presumption. Further, the transcript of the Iowa proceedings discloses that Hogan received adequate opportunity to consult with his attorneys and obtain their advice. In addition, the Iowa sentencing report states that the court informed Hogan of the nature of the crime and asked for his comments before pronouncing sentence. Hogan thereafter affirmed the propriety of his plea by serving his sentence for the manslaughter conviction without any challenge to its validity.[1]
> 
> _____
> 
> [1] Hogan also alleges that there was no adequate waiver of his rights, as required by *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). We have reviewed the transcript and conclude that each of the rights enumerated in *Boykin* was waived, though the Iowa court referred to them rather obliquely. . . .

*Hogan v. State*, 103 Nev. 21, 24, 732 P.2d 422, 423–24 (1987).

Hogan's IAC in relation to the motion strike has changed throughout these proceedings.

_____

[7] Counsel attached to the motion the Information and the transcript of the plea canvass from the Iowa case. ECF No. 191-7, p. 32. Those documents are located at ECF Nos. 191-5 (p. 35) and 191-6 (p. 51-57), respectively.

In pleading Claim 2(H) in his petition, he claims merely that competent counsel would have "moved to strike" the Iowa conviction as an aggravating circumstance "due to its unconstitutionality, which was an available remedy under Nevada law." ECF No. 139, p. 90. This vague allegation is an odd one given that Hogan's counsel did in fact file such a motion, as explained above.

In arguing Claim 2(H) in his reply to the respondents' answer, Hogan does not specifically mention trial counsel's pretrial motion to strike, much less specify how it was deficient. ECF No. 178, p. 3-16. He does argue, however, the manner in which, according to him, the guilty plea was defective under *Boykin*. *Id*., p. 15-16. Specifically, he contends that the guilty plea ran afoul of *Boykin* because the Iowa trial judge "failed to admonish Mr. Hogan regarding the elements of manslaughter, the privilege against self-incrimination, and the right to confrontation." *Id*. As explained above, trial counsel's motion to strike focused on the first alleged defect, but did not specifically mention the other two.

Then, in a memorandum of points and authorities filed herein in April of 2016 (hereinafter referred to as the "April 2016 memorandum"), Hogan faults counsel for basing the motion to strike "entirely on Nevada case law" and for failing to present "controlling United States Supreme Court authority." ECF No. 191, p. 43. In particular, Hogan claims counsel should have been included the following case law:

> *Burgett v. Texas*, 389 U.S. 109 (1967) (constitutionally invalid prior conviction may not be used to enhance punishment); *Boykin*, 395 U.S. 238 (guilty plea invalid if waiver of trial rights is not knowing, voluntary, intelligent); *McMann v. Richardson*, 397 U.S. 759, 791, n.14 (1970) (plea rendered involuntary due to ineffective assistance); *Zant v. Stephens*, 462 U.S. 862, 888 n.23 (1983) (constitutionally invalid prior conviction cannot be used as a basis for a sentence of death); *Marshall v. Lonberger*, 459 U.S. 422 (1983) (prior conviction subject to exclusion if it was the product of an involuntary guilty plea).

*Id*.

Even in its most evolved form, Hogan's IAC claim in relation to trial counsel's alleged failure to adequately challenge the Iowa guilty plea in the Nevada courts is unavailing. At the Iowa plea hearing, the prosecutor, Mr. Dutton, and Hogan's counsel, Mr. Rothschild, explained to the court, respectively, the State's reason for accepting a guilty plea to manslaughter (despite

the open murder charge) and Hogan's reason for entering the plea:

> MR DUTTON: I think perhaps the Court should be apprised of our reason for accepting that plea. As the Court was aware last week, the body was re-autopsied and it was determined at that time that the blow which the victim received on the top of the car during an altercation on the main street of Dunkerton was the cause of the fracture and the cause of death, and the facts leading up to that altercation and that blow are indicative of the crime of manslaughter as opposed to first or second degree murder, and it is our conclusion from reviewing the evidence in light of this new medical evidence that a plea to manslaughter is not only appropriate, but proper under the circumstances.

> MR. ROTHSCHILD: For the record, Your Honor, the Defendant now appears in person and by counsel and hereby enters a plea of guilty to the crime of manslaughter. I might say also to the statement of Mr. Dutton, when the Amended Minutes were filed Mr. Martin [Hogan's co-counsel] and I checked out the theory of the fracture which resulted from the blow on the car as the cause of death. We checked with medical authority and came to the conclusion that, indeed, this was what happened and that this was the cause of death. Mr. Hogan at this time still denies that he pushed this girl out of the car, but he does admit that he struck her head against the car, and on our advice he has entered a plea of guilty thereon.

ECF No. 191-6, p. 53-54. Immediately following this exchange, the judge addressed Hogan personally and had him confirm that he had a sufficient opportunity to consult with his attorneys. *Id.*, p. 54-55. The judge then advised Hogan that he was "under no obligation to plead guilty to any criminal charge" and that he had the right "to be tried by a jury and to require the State to produce evidence beyond a reasonable doubt as to your guilty plea." *Id.* Next, the judge reviewed with Hogan the possible penalties for open murder and for manslaughter. *Id.* Then, the judge had Hogan confirm that his guilty plea was not motivated by any threats or promises from the State or the court. *Id.*, p. 55-56.

Read alone, *Boykin* appears to require an affirmative showing that a defendant entering his guilty plea has waived (1) his privilege against self-incrimination, (2) his right to trial by jury, and (3) his right to confront his accusers and that he was aware of the consequences of the plea. *See Boykin*, 395 U.S. at 243-244. As recognized by the Ninth Circuit, however, the Supreme Court did not adopt that reading of *Boykin* in its subsequent decisions. *See Wilkins v. Erickson*, 505 F.2d 761, 763 (9th Cir. 1974). The court in *Wilkins* held as follows:

> In *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Court citing *Boykin*, upheld held a guilty plea as voluntary and intelligent even though defendant had not been specifically advised of the three

12

rights discussed in *Boykin*. The *Brady* Court clarified *Boykin* by stating, "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." 397 U.S. at 747-748 fn. 4, 90 S.Ct. at 1468. In *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), the Court stated that in determining the validity of guilty pleas the "standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea.

*Id*. Thus, Hogan's guilty plea was not defective under Supreme Court precedent due to the Iowas court's failure to canvass him regarding the privilege against self-incrimination and the right to confrontation.

Likewise, Supreme Court precedent also did not require the Iowa court to explain the elements of manslaughter to Hogan before accepting his guilty plea. *Boykin* imposed no such requirement. In *Henderson v. Morgan*, 426 U.S. 637 (1976), the Court confirmed the long standing precedent that a guilty plea "could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" 426 U.S. at 645 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). However, the Court in *Henderson* also observed as follows:

> Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.

426 U.S. at 647. Thus, under *Henderson*, a reviewing court may presume that a defendant has been informed by counsel of the charges against him before entering a guilty plea. *See Marshall v. Lonberger*, 459 U.S. 422, 436-37 (1983) (relying on *Henderson* to conclude defendant's guilty plea was voluntary notwithstanding the absence of a recitation of charges at the plea hearing). The defendant's guilty plea was found defective in *Henderson* because "the trial judge found as a fact that the element of intent was not explained to respondent" and "respondent's unusually low mental capacity provides a reasonable explanation for counsel's oversight." *Henderson*, 426 U.S. at 647.

13

Here, Hogan has not presented evidence that would overcome the presumption that counsel had advised him of the true nature of the charges against him. The specific factual allegations supporting the manslaughter charge were discussed at the plea hearing and Hogan confirmed that he consulted with counsel prior to entering his guilty plea.

Hogan cannot establish that he is entitled to relief under *Strickland* due counsel's failure to adequately challenge the Iowa guilty plea on constitutional grounds because, for the reasons explained above, the transcript of the Iowa plea hearing shows that Hogan entered his plea knowingly and voluntarily under controlling Supreme Court authority.[8]

### b. Failure to timely challenge manslaughter conviction in the Iowa courts.

Hogan's IAC claim with respect to trial counsel's failure to timely challenge his guilty plea in the Iowa courts is slightly more compelling. While U.S. Supreme Court precedent may not have provided trial counsel with sufficient grounds to set aside Hogan's guilty plea, it is fairly clear that Iowa case law, in particular *State v. Sisco*, did. In a case recounting the history of plea-bargaining regulation in Iowa, the Iowa Supreme Court gave the following description of the holding in *Sisco*:

> The plea-bargaining landscape dramatically changed in 1969, however, with what one commentator called the "blockbuster" case of *State v. Sisco*, 169 N.W.2d 542 (Iowa 1969). *See* Arthur N. Bishop, *Guilty Pleas in the Northern Midwest*, 25 Drake L.Rev. 360, 363 (1975). In *Sisco*, we adopted the ABA Minimum Standards for Criminal Justice, Pleas of Guilty, sections 1.4 through 1.7. 169 N.W.2d at 548, 550. The ABA standards required that "the court should not enter a judgment upon such plea without making such inquiry as may satisfy it that there is a factual basis for the plea." *Id.* at 548 (internal quotation marks omitted). We noted that under the ABA standards, the "inquiry into the accuracy of the plea" was to be made on the "verbatim record of the proceedings at which the defendant enters a plea of guilty." *Id.* at 549–50 (internal quotation marks omitted). Relying on *McCarthy* [*v. United States*, 394 U.S. 459 (1969)] and *Boykin*, we reasoned that because the record did not show that the defendant understood the charge, the legal consequences of the plea, or that it was voluntarily made, the judgment had to be set aside and the case remanded to the district court for further proceedings. *Id.* at 550–51. Although not specifically stated, *Sisco* considered the underlying constitutional difficulties with the plea process under a voluntariness, or due process, theory.
>
> *Sisco* set forth four basic requirements that must be met before a conviction could be entered on the basis of a guilty plea: (1) the defendant must

---

[8] The additional authority cited in Hogan's April 2016 memorandum presupposes that his guilty plea was invalid. Thus, it would not have improved Hogan's chances of striking the aggravating circumstance.

> understand the charge, (2) the defendant must be aware of the penal consequences of the plea, (3) the defendant must enter the plea voluntarily, and (4) before pronouncing judgment, the district court must determine whether there is a factual basis for the plea. *Id.* at 547–48. While the first three requirements were to be determined prior to accepting a plea, the factual-basis requirement was to be determined at any time prior to the entry of judgment. *Id.* Thus, Sisco differentiated between the requirements that a plea be entered voluntarily and with understanding from the requirement that the district court determine there was a factual basis for the plea.

*State v. Finney*, 834 N.W.2d 46, 55–56 (Iowa 2013). In addition, *Sisco* requires the court accepting a guilty plea to "address the accused personally and by that procedure heretofore prescribed determine whether he understands the charge made." *Sisco*, 169 N.W.2d at 549. Thus, a reviewing court may not presume that defendant's counsel has explained the charges in deciding whether defendant's guilty plea is valid under Iowa law.

As noted above, there is a reasonable probability that a timely challenge to Hogan's guilty plea under *Sisco*, in the Iowa courts, would have been successful, which, in turn, would have precluded the State of Nevada from using the conviction as an aggravating circumstance to support the death penalty. In addition, there is a reasonable probability that the lone remaining aggravating circumstance – i.e., that Hogan knowingly created a great risk of death to more than one person – would not have been weighty enough, standing alone, for the jury to impose the death penalty. Thus, Hogan can satisfy the prejudice prong of the *Strickland* test with respect to this aspect of his IAC claim.

With respect to the performance prong, Hogan's trial counsel's performance must be evaluated based on the law and the "prevailing professional norms" as they existed at the time of his trial in 1985. *See Strickland*, 466 U.S. at 690. The relevant question, therefore, is whether in 1985, Hogan's trial counsel's representation "fell below an objective standard of reasonableness" when they failed to collaterally challenge Hogan's manslaughter conviction in the Iowa courts.

There is little or no question that the prevailing professional norms obligated Hogan's trial counsel to investigate (and challenge if appropriate) the validity of the prior violent felony aggravating circumstance, especially given the strength of the State's guilt phase case against Hogan and the extent to which the State's penalty phase case relied upon it. Less clear, however, is whether prevailing norms contemplated pursuing relief from a prior conviction by filing a

collateral challenge in the jurisdiction in which the conviction was entered.[9]

Hogan cites to a March 1984 article in *The Champion* magazine, a publication of the National Association of Criminal Defense Lawyers, which contains the following passage:

> [A] prior conviction may be subject to exclusion because defendant was not represented by counsel and did not waive that right (*Zant v. Stephens*, *supra*, 77 L.Ed.2d at 256, fn. 23; *Burgett v. Texas*, *supra*, 389 U.S. at 155; *Matthew v. Maggio*, (5th Cir. 1983) 714 F. 2d 362), because the prior conviction was the product of an involuntary guilty plea (*Marshall v. Lonberger* (1983) ____ U.S.____, 74 L.Ed.2d 646), or because counsel in the previous case rendered ineffective assistance.
>
> State law may provide additional reasons for excluding this evidence. For example, where a statute authorizes the admission of prior felony convictions only for offenses involving force or violence, counsel should consider requesting that the prosecution demonstrate the existence of those elements outside the jury's presence. (*State v. Lewis* (Fla. 1981) 398 So.2d 432; *State v. Moore* (Tenn. 1981) 614 S.W.2d 348; *State v. Gill* (S.C. 1979) 255 S.E.2d 455) . . . .

ECF No. 191-3, p. 18 (footnote omitted.). He also references the 1986 California Public Defender Death Penalty Defense Manual and quotes the following excerpt:

> A constitutionally invalid prior conviction may not be used to enhance punishment or for any other purpose. (*Burgett v. Texas* (1967) 389 U.S. 109, 115; *In re Rogers* (1980) 28 Cal.3d 429, 433-434.) The application of this principle to a capital sentencing trial was recognized in *Zant v. Stephens* [462 U.S. 862 fn. 23 (1983)]; as the Court explained, "even in a non-capital sentencing proceeding, the sentence must be set aside if the trial court relied at least in part on 'misinformation of constitutional magnitude' such as prior uncounseled convictions." (*Id.*, at 887, n. 23.) This principle applies whether the prior conviction occurred in California, another state, or a foreign country. (*People v. Coffey* (1967) 67 Cal.2d 204, 215; *People v. La Fargue* (1983) 147 Cal.App.3d 878, 891-891.)
>
> Where, for example, the prior conviction is based upon a guilty plea . . . counsel should obtain and review the record of the prior proceedings to determine if it establishes that defendant knowingly and intelligently waived his rights. (*Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal.3d 122; *Bunnell v. Superior Court* (1975) 13 Cal.3d 592.) In addition, counsel should undertake appropriate investigation to ascertain whether the plea may have been involuntary for reasons not apparent on the record, e.g., ineffective assistance of counsel (*McMann v. Richardson* (1970) 397 U.S. 759, 791, n. 14), such as counsel's failure to advise defendant of his rights . . . .

ECF No. 191, p. 35-36.

---

[9] According to Cooper's declaration, "it never occurred to [him] to file a challenge to the conviction in Iowa courts after I lost the challenge to strike the aggravator in Nevada." ECF No. 191-2, p. 58. Thus, the omission is not defensible as a "strategic choice." *See Strickland*, 466 U.S. at 690-91.

Both sources advocate attempting to exclude the prior conviction,[10] but neither source makes any mention of trial counsel challenging a prior conviction by seeking to have it set aside in the jurisdiction of origin. Issued almost 20 years after Hogan's trial, the 2003 ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases includes commentary indicating that defense counsel is obligated to bring collateral challenges against legally flawed convictions and notes, in a footnote, that the obligation "may well require counsel to litigate collateral challenges to such prior convictions in the jurisdictions or districts where those convictions were obtained."[11] *See* American Bar Association, American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, comment. (rev. ed. 2003), reprinted in 31 Hofstra L. Rev. 913, 924 n. 7, 927 n.22, 1027 n. 222 (2003). The primary case cited as support for those comments, *Johnson v. Mississippi*, 486 U.S. 578 (1988), also post-dated Hogan's trial. *Cf. Bobby v. Van Hook*, 558 U.S. 4, 7-8 (2009) (holding inappropriate the lower court's reliance on the 2003 American Bar Association (ABA) Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, which were not announced until 18 years after the defendant's trial).

As additional support, Hogan has submitted the declaration of Martin Weiner, who Hogan represents as a *Strickland* expert and who has defended four capital cases in Nevada (three in the five years prior to Hogan's trial). ECF No. 191-2, p. 33-53. In his declaration, Weiner states that "[t]he professional standard of care in 1985 effectively mandated challenging the manslaughter conviction by attacking it in the Iowa courts." *Id*., p. 42. However, he cites to no authority to support this claim other than that discussed above -- i.e., the *Champion* article, the California Public Defender Death Penalty Defense Manual, and the *Johnson* case. *Id*. And, with respect to *Johnson*, the only example Weiner identifies, this court notes that it was post-conviction counsel, not trial or appellate counsel, who successfully invalidated the petitioner's

---

[10] The 1986 California Public Defender Death Penalty Defense Manual contemplates a motion to strike prior to the penalty phase in the capital case, which is the method Hogan's counsel employed. ECF No. 191-5, p. 8.

[11] The 2003 ABA Guidelines superceded the 1989 ABA Guidelines. The 1989 Guidelines (including commentary) also make no mention of challenging prior felony convictions, in the jurisdiction of origin or otherwise. *See* American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (1989).

prior violent felony conviction.  *See Johnson*, 486 U.S. at 582.

In addition, all of the sources above discuss challenging the prior conviction either because it is constitutionally defective under U.S. Supreme Court precedent or because it may be excluded as aggravating evidence under laws of the state prosecuting the capital case.  None of them make any specific reference to seeking to set aside the conviction based on state law errors committed by the court in the jurisdiction of origin.  Indeed, Hogan does not identify a single case, reported or otherwise, in which a defendant successfully mounted such a challenge.

In this case, Hogan's trial counsel contacted the public defender in the Blackhawk County, Iowa, (the county in which Hogan was convicted) for information about the Iowa conviction.[12]  ECF No. 191-2, p. 56-57; and ECF No. 191-10, pp. 10, 59, 73-74.  After reviewing the transcript of the Iowa plea hearing, counsel moved to strike the Iowa conviction in the Nevada trial on the ground that Hogan's guilty plea in that case was "constitutionally defective," in particular because the Iowa state court record failed to affirmatively demonstrate that Hogan entered the plea "knowingly and understandingly."  ECF No. 191-7, p. 29-39.

For reasons discussed above, this court is unable to conclude that Hogan's counsel were obligated by prevailing professional norms at the time to go beyond the motion to strike in the Nevada trial court and also collaterally attack the Iowa conviction in the Iowa courts.  Moreover, counsel's failure to discover that Iowa case law imposed guilty plea requirements beyond those imposed by U.S. Supreme Court precedent did not place counsel's performance below an objective standard of reasonableness.  Thus, while there is a reasonable probability that a timely post-conviction petition in the Iowa courts would have been successful, Hogan did not receive ineffective assistance of counsel by virtue of trial counsel's failure to pursue such a petition.[13]

---

[12] Counsel also attempted to contact the attorney who represented Hogan in the Iowa proceeding, but he had passed away.  ECF No. 191-10, pp. 10, 70.

[13] Hogan also claims that effective counsel would have sought to have the Iowa conviction set aside in the Iowa courts because it was the product of ineffective assistance of counsel.  This claim fails for the same reason – i.e., the prevailing professional standard in 1985 did not contemplate capital defense counsel bringing collateral attacks in other jurisdictions while simultaneously preparing to defend the capital case in the home jurisdiction.

### c.  Failure to challenge whether manslaughter conviction involved violence.

Hogan's Iowa manslaughter conviction involved a physical altercation between himself and a female acquaintance, Sandra Kubicek, on Main Street in Dunkerton, Iowa, in August 1970.[14]  According to witnesses, the initial altercation ended with Hogan slamming Kubicek's head against the car above the driver's side door, knocking her out.  Hogan picked up Kubicek and placed her in the car.  After regaining consciousness, Kubicek exited the car, but shortly thereafter she and Hogan left in the car together.  About fifteen minutes later, witnesses riding in a car on a rural highway outside of Dunkerton saw the passenger side door of a car in front of them open and an object fall out.  Upon stopping, the witnesses found Kubicek, unconscious, but still alive.  After driving approximately three quarters of a mile up the road, Hogan turned the car around, and returned to the location where Kubicek was lying beside the road.  The witnesses reported that they had not seen Hogan's car slow down appreciably or swerve when Kubicek came out of the passenger side.  Hogan told authorities that Kubicek had jumped out of the car.

The State of Iowa charged Hogan with open murder under the theory that Hogan pushed Kubicek out of the moving car.  The initial autopsy report noted severe cerebral edema, focal cerebral contusions, and multiple skull fractures and indicated "skull fracture" as the probable cause of death.  To support its murder theory, the State appeared to have been relying, at least in part, on a shoe print on the passenger side door as evidence.  However, while the initial sheriff's report indicated that the shoe print matched the shoe Hogan was wearing, a subsequent FBI report determined the print was "too indistinct" to permit a conclusive opinion.

In January 1971, Kubiceck's body was exhumed and subjected to a second autopsy.  The report from that autopsy stated that, at the time of the first autopsy, there was no evidence "to indicate anything but an accidental death," but that information gathered following the burial of the deceased "indicated that the deceased may have sustained an injury to the head prior to any injury that may have been sustained, due to falling from an automobile on the same day."  The report confirmed the findings of the first autopsy with respect to the injuries to the head, but included an "additional finding of an incision wound over the external occipital protuberance at

---

[14] This court's factual account of the incident is based on documents located at ECF Nos. 191-5, 191-6, and 191-9.

the point of a stellate occipital basilar skull fracture." Like the first report, however, the second autopsy report did not contain an opinion as to proximate cause of the Kubicek's death. Shortly thereafter, the State changed the theory of its case to claim that Hogan caused Kubicek's death by slamming her head against the car.

The statutory provision on which the State relied to use the Iowa manslaughter conviction as an aggravating circumstance provided, at the time, as follows:

> The murder was committed by a person who was previously convicted of another murder or a felony involving the use or threat of violence to the person of another."

Nev. Rev. Stat. § 200.033(2) (1983). The only evidence the State presented to the jury in the penalty phase to support the aggravating circumstance was the brief testimony of Hogan's Iowa parole officer and documents from the Iowa court showing that Hogan had been convicted of manslaughter pursuant to a guilty plea. ECF No. 191-8, p. 23-27. The parole officer did not testify to any of the facts underlying the conviction other than that Hogan and the victim had been dating "off and on" at the time of the victim's death. *Id.*

In 1970, Iowa's statutes did not include a definition of manslaughter and did not distinguish between voluntary and involuntary manslaughter. *See State v. Shimon*, 182 N.W.2d 113, 114 (Iowa 1970). Instead, "[t]he common-law definition, the unlawful killing of another without malice express or implied, prevail[ed] in Iowa," with voluntary manslaughter defined as a killing "in a sudden heat of passion due to adequate provocation" and involuntary manslaughter defined as "an unintentional killing without malice in the doing of an unlawful act not amounting to a felony or of some lawful act in an unlawful manner." *Id.* (citation omitted).

Hogan argues that the State failed to meet its burden of proof with respect to the prior violent felony aggravator because manslaughter under Iowa law did not necessarily include as one of its elements "the use or threat of violence to the person of another" and the State presented no other evidence from which the jury could find that Hogan's Iowa conviction satisfied the aggravating circumstance. Based on that, Hogan argues that his counsel were ineffective by not either (1) demanding that the prosecution prove to the trial court, outside the presence of the jury, that the Iowa conviction amounted to a crime of violence or (2) asking the

trial court to instruct the jury to acquit after the prosecution rested because the prosecution had not proved that the Iowa conviction amounted to a crime of violence. ECF No. 191, p. 38-42.

As noted, Hogan's counsel had contacted the Black Hawk County public defender's office for information about Hogan's manslaughter conviction, but apparently was not informed by that office that manslaughter in Iowa subsumed voluntary and involuntary manslaughter.[15] Counsel's failure to seize upon this point of law from another jurisdiction is an understandable oversight, especially given that the salient facts of the Iowa case did not suggest the possibility of involuntary manslaughter. This court is not convinced that prevailing professional norms in 1985 required Hogan's counsel to challenge the prior violent felony aggravator based on Iowa law. However, even if counsel's performance was unreasonably deficient in this regard, there is very little likelihood such a challenge would have been successful.

Nevada law has never provided that involuntary manslaughter cannot qualify as a crime of violence for the purposes of Nev. Rev. Stat. § 200.033(2) or that only the elements of an offense may be considered in determining whether that offense meets the statutory definition. In a case decided long after Hogan's trial, the Nevada Supreme Court rejected the notion that Nev. Rev. Stat. § 200.033(2) "limits the determination of the character of a felony simply to consideration of its statutory elements." *Redeker v. Eighth Judicial Dist. Court of State of Nev. ex rel. Cty. of Clark*, 127 P.3d 520, 525-26 (2006). However, at least with respect to cases where the prior felony was the product of a guilty plea, the court in *Redeker* limited the permissible evidence to "the statutory definition, charging document, written plea agreement, transcript of the plea canvass, and any explicit factual finding by the [trial] court to which [the defendant] assented." *Id*. at 526.

There is little doubt that the State would have been able to prove to the trial court, outside the presence of the jury, that the Iowa conviction amounted to a crime of violence. In its notice

---

[15] When asked at his deposition whether it occurred to him that the Iowa manslaughter may have been involuntary manslaughter as opposed to voluntary manslaughter, Cooper testified that he thinks that they took the manslaughter conviction at "face value" and did not think question the possibility that it may have been involuntary manslaughter. ECF No. 191-10, p. 90-91. He also testified that they were specifically concerned that Hogan had been charged with murder. *Id*. While Franzen testified that he thought they had been aware the issue prior to trial because "we made argument on it" (*id*., p. 26.), no such argument appears in the record.

of intent to seek the death penalty, the State identified several witnesses it was prepared to present, if necessary, to "support its allegation regarding the Manslaughter conviction." ECF No. 191-6, p. 71. (According to her deposition in 1970, one of those witnesses watched the physical altercation between Hogan and Kubicek, including when he slammed her head against the car, knocking her unconscious. ECF No. 191-6, p. 1-17.) Even under the limitations later imposed by *Redeker*, the State would have been permitted to present (and did in this case, albeit for a different reason) the transcript of the Iowa plea canvass that, according to the Nevada Supreme Court, "conclusively demonstrated that Hogan resorted to violence in the commission of his crime." *Hogan*, 860 P.2d at 713.

Asking the trial court to instruct the jury to acquit after the prosecution rested its penalty phase case would have fared no better. While it is true that the jury was not apprised of the factual circumstances underlying the manslaughter conviction, the trial court would have undoubtedly looked to the Iowa plea canvass in considering such a request. And, while the jury was instructed that the State was required to prove the *existence* of a prior violent felony conviction beyond a reasonable doubt (ECF No. 142-5, p. 6.), the Nevada Supreme Court permitted the trial court could decide, as a threshold issue, whether the conviction involved "violence" for the purposes of Nev. Rev. Stat. § 200.033(2).[16] *See Hogan*, 860 P.2d at 714.

Finally, Hogan faults counsel for not conducting an adequate investigation into facts surrounding the Iowa conviction and claims that such an investigation would have allowed counsel to prove that Kubicek died as a result of her jumping out of the car on her own volition. To support this claim, Hogan points to the following evidence: (1) Kubicek's death certificate which noted "accident" as the cause of death (ECF No. 191-5, p. 14-15); (2) the two Iowa autopsy reports discussed above (ECF Nos. 191-5, p. 45-50 and 191-6, p. 37-41); (3) the deposition of the woman who watched Hogan slam Kubicek's head against the car and also saw Kubicek regain consciousness shortly thereafter (ECF No. 191-6, p. 1-17); (4) the depositions of

---

[16] The U.S. Supreme Court did not decide until 2002 that a capital defendant is entitled a jury determination with respect to the existence of an aggravating circumstance necessary to qualify the defendant for the death penalty. *See Ring v. Arizona*, 536 U.S. 584 (2002). The Court subsequently determined that the holding in *Ring* is not retroactive. *See Schriro v. Summerlin*, 542 U.S. 348 (2004). Even post-*Ring*, it is not clear that a determination as to the character of a felony would be a factual issue to be decided by a jury as opposed to a legal question for the court.

the passengers in the car behind the car Hogan was driving who observed Kubicek exit the car (*id*., p. 18-36); and (5) the FBI report on the shoe print evidence (ECF No. 191-5, p. 51-52).

Hogan has also submitted the report of a forensic pathologist, Dr. Charles Wetli, M.D., who reviewed the documents pertaining to Kubicek's death. (ECF No. 191-2, p. 1-31.) Dr. Wetli concluded as follows:

> It is . . . my opinion to a degree of reasonable medical certainty that the concussion sustained by Ms. Kubicek from a head impact on the top of an automobile was not a lethal injury, and that the fatal craniocerebral trauma was solely the result of departing from a moving vehicle and striking the back of her head on the ground. Furthermore, the medical knowledge supporting this conclusion was available in 1970-1971 and 1985 to anybody who consulted with physicians familiar with craniocerebral trauma, such as neurologists, neurosurgeons or forensic pathologists.

*Id*., p. 5.

The record establishes that trial counsel conducted very little, if any, factual investigation in relation to the Iowa case. Counsel's request to send an investigator to Iowa was denied by the CCPDO, so counsel relied upon the Black Hawk County public defender's office to obtain information. ECF No. 191-2, p. 56-57. And, as noted, counsel attempted to contact Hogan's Iowa attorney, but learned that he had since passed away. According to counsel, Hogan told them that Kubicek threw herself out of the car and that he was not responsible for her death. *Id*.; ECF No. 191-10, p. 70. In addition, counsel must have obtained at least one of the Iowa autopsy reports. The transcript of the penalty phase hearing includes the following exchange:

> MR. FRANZEN: Your Honor, there was one other item we discussed in chambers, and that was the autopsy performed in Iowa that we wished to introduce during the- -
>
> THE COURT: I believe the State said that they had no objection to it even though it was hearsay
>
> MR. FRANZEN: I just wanted it on the record.

ECF No. 191-8, p. 20. Despite this exchange, the autopsy was never introduced as evidence. In addition, it is not clear to which autopsy counsel was referring or for what purpose they wished to introduce it. Because the first autopsy contained only medical findings, it was presumably the second autopsy that stated that there was no evidence at the time of the first autopsy "to indicate

anything but an accidental death." In any case, counsel was at least aware that autopsy findings failed to confirm the proximate cause of Kubicek's death.

Irrespective of whether counsel was deficient by conducting a lackluster investigation into the facts underlying the Iowa manslaughter, this court is not convinced that there is a reasonable probability that a more thorough investigation would have changed the outcome of Hogan's trial. Had counsel failed to uncover evidence showing that Hogan had committed involuntary manslaughter as opposed to voluntary manslaughter, it would be a different matter. Here, however, Hogan is claiming that the evidence counsel overlooked shows that he had not committed manslaughter at all.

Because the Iowa conviction was valid and final, Hogan's counsel would have had the burden of proving to the penalty phase jury (assuming the trial court would have allowed it) that Hogan did not cause Kubicek's death. The evidence Hogan relies upon to establish this point is inconclusive. Evidence suggesting that Hogan did not push Kubicek out of the moving car does not eliminate the possibility that she died from injuries incurred when Hogan struck her head against the car. As noted, neither of the two Iowa autopsy reports establish which blow to Kubicek's head was the fatal one. And, any weight that might be assigned to Dr. Welti's report is undermined by Hogan's failure to produce it until thirty years after his trial and the fact that it is based on Dr. Welti's review of documents and photographs as opposed to first-hand observations.

In addition, delving into the facts of the Iowa case in the penalty phase would have opened the door to the presentation of extremely prejudicial evidence, which might have included not only the transcript of the Iowa plea canvass but also the details of the physical altercation between Hogan and Kubicek, which included him choking her and violently slamming her head against the car. ECF No. 191-6, p. 6-8. Hogan's counsel were concerned that Hogan had been charged with murder and made the strategic decision to limit the jury's exposure to the circumstances surrounding the Iowa case. ECF No. 191-10, p. 90; 191-8, p. 99. Even if it was made without first conducting a reasonable investigation, that decision, considered objectively, was a reasonable one. *Cf. Correll v. Ryan*, 539 F.3d 938, 951 (9th Cir. 2008)

(finding counsel ineffective in penalty phase where counsel failed to conduct reasonable investigation and counsel's failure to present available mitigating evidence could not "be considered a reasonable strategy by any objective measure").

In summary, Hogan cannot satisfy both elements of the *Strickland* test with respect to any of his trial counsel's alleged errors or omissions related to the prior violent felony aggravator. Claim Two(H) is denied.

**Claim Ten (part)**

In Claim Ten, Hogan claims that his convictions and death sentence are invalid under the federal constitution because the trial court improperly allowed inadmissible hearsay to be admitted in violation of Mr. Hogan's right to confront witnesses against him. In ruling upon respondents' motion to dismiss, this court determined that the claim is procedurally defaulted except as it relates to the admission of prior testimony by Dr. Sheldon Green, the medical examiner who performed Heidi Hinkley's autopsy, and the admission of certain statements by Hinckley about threats of violence.

With respect to the latter, Hogan cites to two witnesses who testified to statements Hinckley made to them about Hogan threatening her. Claudia Michelle Brown,[17] Hinckley's daughter, testified that Hinckley woke her up around 3:00 a.m. on November 19, 1984, and stated that "Michael just threatened to kill me." Docket no. 8, Exhibit O, p. 206-08.[18] Elaine Lundmark, Hinckley's friend and neighbor, testified that Hinckley had said "that Michael had pulled a gun out, and that she had woken Shelley up from sleep and brought her to my house for safety" and also "that he had pulled a gun on her and said that he was going to kill her." *Id.*, p. 457.[19]

---

[17] Brown is sometimes referred to as "Shelly" or "Shelley" in pleadings filed herein and the state court record.

[18] A portion of the state court record was first filed in Hogan's previous federal habeas proceeding in this court (Case no. CV-S-89-182-LDG), then, by court order, transferred to and filed in this case on August 6, 1997. Consequently, it is not part of the CM/ECF docket.

[19] Additional testimony cited in Ground Ten is not considered here because it did not contain an out of court statement by Hinckley, was not challenged in Hogan's state court proceedings, and/or was elicited during a suppression hearing outside of the presence of the jury.

Hogan challenged the admissibility of the foregoing statements in the direct appeal of his conviction and sentence. ECF No. 143-4, p. 84-90. The Nevada Supreme Court ruled as follows:

> [H]earsay testimony that Hogan had threatened to kill Ms. Hinkley was admissible under NRS 51.095, the "excited utterance" exception to the hearsay rule. Two witnesses testified that the victim told them Hogan had threatened to kill her. One statement came just after the threat; the other, approximately an hour later. In each case, Ms. Hinkley was frightened, shaking, nervous and crying. Thus, the court did not err in finding the statements admissible, *see Dearing v. State*, 100 Nev. 590, 691 P.2d 419 (1984).

*Hogan*, 732 P.2d at 423.

The Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI. Because Hogan's conviction became final prior to *Crawford v. Washington*, 541 U.S. 36 (2004), the applicable standard for this claim is set forth in *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). *See Whorton v. Bockting*, 549 U.S. 406, 421 (2007). In *Roberts*, the Court held that the admission of hearsay statements against a criminal defendant is constitutionally permissible so long as the speaker is unavailable and the statements bear adequate indicia of reliability, either falling within a "firmly rooted hearsay exception" or containing "particularized guarantees of trustworthiness." 448 U.S. at 66.

Here, the speaker, Hinckley, was unavailable to testify a trial. The Supreme Court has held that "spontaneous declarations" – the same types of statements referred to as "excited utterances" under Nevada's hearsay rules – constitute a "firmly rooted" hearsay exception. *White v. Illinois*, 502 U.S. 346, 355 n. 8 (1992). The rationale for the exception is that "[a] statement that has been offered in a moment of excitement—without the opportunity to reflect on the consequences of one's exclamation—may justifiably carry more weight with a trier of fact than a similar statement offered in the relative calm of the courtroom." *Id*. at 356.

Hogan disputes the Nevada Supreme Court's determination that the statements at issue qualified as excited utterances. Under § 2254(d)(2), this court must accept the state court's factual findings unless they are objectively unreasonable, which they are not in this instance. Given the circumstances cited by the Nevada Supreme Court, its determination that Hinckley's

statements to Brown and Lundmark were "excited utterances" was not an unreasonable application of *White*, clearly established federal law. *Cf. Woods v. Sinclair*, 764 F.3d 1109, 1124–25 (9th Cir. 2014) (holding that state court reasonably concluded victim's statements to a paramedic shortly after being attacked were excited utterances, but that the state court unreasonably applied *White* in concluding the exception also applied to statements victim made to her father after being examined and questioned at the hospital).

As for Dr. Green's prior testimony, the trial court permitted his preliminary hearing testimony to be read into the record at Hogan's trial, with respective counsel reading their questions and the court reporter who recorded the preliminary hearing reading Dr. Green's responses. Docket no. 8, Exhibit O, p. 338-55. In *Roberts*, the Court concluded that a transcript of a witness's preliminary hearing testimony bore sufficient "indicia of reliability" because defendant's counsel had an adequate opportunity to cross-examine the witness and availed himself of that opportunity. 488 U.S. at 73.

In similar fashion, defense counsel had a chance to, and did, cross-examine Dr. Green at Hogan's preliminary hearing. Docket no. 9, Exhibit C, p. 9-15. While Hogan challenges the manner and circumstances under which counsel conducted that cross-examination, the Court in *Roberts* clarified that an inquiry into the "effectiveness" of the actual cross-examination is not part of the Confrontation Clause analysis. 488 U.S. at 73, n. 12. And, although it may not have been as probing as the questioning counsel would have employed at trial, counsel's cross-examination "afforded 'substantial compliance with the purposes behind the confrontation requirement.'" *Id.* at 71 (quoting *California v. Green*, 399 U.S. 149, 166 (1970)). Thus, the admission of Dr. Green's preliminary hearing testimony was constitutionally permissible assuming that he was not available to testify in person at Hogan's trial.

In upholding the admissibility of Dr. Green's testimony, the Nevada Supreme Court stated:

> We perceive no error in the trial court's ruling that the State could use the preliminary hearing testimony of the county's pathologist, Doctor Green. The court was independently aware that coronary bypass surgery rendered the doctor unavailable to testify at the time of the trial. Therefore, any deficiency in the State's formal showing of unavailability was inconsequential. The requirements

of NRS 171.198(7) and *Drummond v. State*, 86 Nev. 4, 462 P.2d 1012 (1970), were satisfied.

*Hogan*, 732 P.2d at 423.

"[A] witness is not 'unavailable' for purposes of the . . . confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Hardy v. Cross*, 565 U.S. 65, 69 (2011), (quoting *Barber v. Page*, 390 U.S. 719, 724-25 (1968)). "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *Roberts*, 448 U.S. at 74 (citation omitted). "[T]he deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken." *Hardy*, 565 U.S. at 494.

Here, there is no dispute that Dr. Green's incapacity prevented him from testifying at the time of Hogan's trial. Hogan argues, however, that Dr. Green's unavailability was not adequately established because the trial court and the prosecutor were aware that Dr. Green would be unavailable due to the surgery, but nonetheless refused to reschedule the trial for a couple of months, at which time he would be available to testify.[20]

This is not a convincing argument. Even if a witness's disability is only temporary, the court is not necessarily required continue a trial in observance of a defendant's rights under the Confrontation Clause. *See Ecker v. Scott*, 69 F.3d 69, 72 (5th Cir. 1995). Instead, the decision whether to continue the trial is "an exercise of a trial court's sound discretion." *Id*. at 73. Here, Dr. Green's testimony did not involve subject matter that the defense disputed or intended to dispute. In addition, his testimony did not conflict with another witness's testimony such that the jury's evaluation of his demeanor would assist the fact-finding process. These factors weighed against continuing Hogan's trial to allow for Dr. Green's live testimony. *See id.* at 72.

Moreover, violation of the Confrontation Clause is subject to harmless-error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). If the error did not result in "actual

---

[20] While he did not request a continuance for the purpose of allowing Dr. Green to testify at trial, Hogan notes that his counsel did request a continuance claiming that, due to illness, he (counsel) needed more time to prepare for trial.

28

prejudice," Hogan is not entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The trial evidence proving Hogan's guilt was overwhelming. Most notably, Claudia Brown testified that, while eavesdropping in the bathroom, she heard Hinckley and Hogan arguing in the living room and then heard gunfire and Hinckley telling her to run. She further testified that Hogan came into the bathroom about twenty seconds later and shot her. Even if there was a Confrontation Clause violation, Hogan has not shown that it affected the outcome of his trial.

Claim Ten is denied.

### Claims Eleven (C-D)

In Claim Eleven, Hogan claims that certain jury instructions rendered his conviction and sentence unconstitutional because they misinformed jurors about their responsibilities during trial, improperly minimized the State's burden of proof, and did not protect against the arbitrary and capricious infliction of the death penalty.

In Claim Eleven(C), he challenges an instruction that contained the following language:

> A verdict may never be influenced by sympathy, prejudice or public opinion. Your decision should be the product of sincere judgment and sound discretion in accordance with these rules of law.

ECF No. 142-5, p. 67. Hogan argues that the instruction negated the constitutional mandate that all mitigating evidence be considered.

The Nevada Supreme Court addressed this claim in deciding Hogan's direct appeal:

> The court likewise did not err in instructing the jury not to base its penalty decision on sympathy, since the jury was also instructed to consider any mitigating circumstances. *Nevius v. State*, 101 Nev. 238, 699 P.2d 1053 (1985).[4] Moreover, such an instruction is not without benefit to a defendant since it precludes a jury from selecting a penalty provoked by sympathy for victims or their survivors.

_____

[4] The instruction regarding mitigating circumstances was skeletal, but only because Hogan had first requested deletion of inapplicable statutory circumstances, then proposed in their place a properly objectionable list of nonstatutory circumstances; that list contained assertions of facts not in evidence, general statements of penal theory, and mere negations of inapplicable statutory aggravating circumstances.

*Hogan*, 732 P.2d at 424–25.

In *Saffle v. Parks*, 494 U.S. 484 (1990), the Supreme Court considered a capital habeas petitioner's argument that the Eighth Amendment, as interpreted by the Court in earlier cases, requires "that jurors be allowed to base the sentencing decision upon the sympathy they feel for the defendant after hearing his mitigating evidence." 494 U.S. at, 489. The Court held:

> We also reject Parks' contention that the antisympathy instruction runs afoul of *Lockett* [*v. Ohio*, 438 U.S. 586 (1978)], and *Eddings* [*v. Oklahoma*, 455 U.S. 104 (1982)], because jurors who react sympathetically to mitigating evidence may interpret the instruction as barring them from considering that evidence altogether. This argument misapprehends the distinction between allowing the jury to consider mitigating evidence and guiding their consideration. It is no doubt constitutionally permissible, if not constitutionally required, *see Gregg v. Georgia*, 428 U.S. 153, 189-195, 96 S.Ct. 2909, 2932-2935, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and STEVENS, JJ.), for the State to insist that "the individualized assessment of the appropriateness of the death penalty [be] a moral inquiry into the culpability of the defendant, and not an emotional response to the mitigating evidence." *California v. Brown*, 479 U.S., at 545, 107 S.Ct., at 841 (O'CONNOR, J., concurring). Whether a juror feels sympathy for a capital defendant is more likely to depend on that juror's own emotions than on the actual evidence regarding the crime and the defendant. It would be very difficult to reconcile a rule allowing the fate of a defendant to turn on the vagaries of particular jurors' emotional sensitivities with our longstanding recognition that, above all, capital sentencing must be reliable, accurate, and nonarbitrary. *See Gregg, supra*, 428 U.S., at 189-195, 96 S.Ct., at 2932-2935; *Proffitt v. Florida*, 428 U.S. 242, 252-253, 96 S.Ct. 2960, 2966-2967, 49 L.Ed.2d 913 (1976) (opinion of Stewart, Powell, and STEVENS, JJ.); *Jurek v. Texas, supra*, 428 U.S., at 271-272, 96 S.Ct., at 2956 (same); *Woodson v. North Carolina*, 428 U.S. 280, 303-305, 96 S.Ct. 2978, 2990-2991, 49 L.Ed.2d 944 (1976) (plurality opinion); *Roberts v. Louisiana*, 428 U.S. 325, 333-335, 96 S.Ct. 3001, 3006-3007, 49 L.Ed.2d 974 (1976) (plurality opinion). At the very least, nothing in *Lockett* and *Eddings* prevents the State from attempting to ensure reliability and nonarbitrariness by requiring that the jury consider and give effect to the defendant's mitigating evidence in the form of a "reasoned *moral* response," *Brown*, 479 U.S., at 545, 107 S.Ct., at 841 (emphasis in original), rather than an emotional one. The State must not cut off full and fair consideration of mitigating evidence; but it need not grant the jury the choice to make the sentencing decision according to its own whims or caprice. *See id.*, at 541-543, 107 S.Ct., at 839-840.

*Parks*, 494 U.S. at 492–93.

Hogan attempts to distinguish his case from *Parks* by claiming that the jury in *Parks* was also instructed "that it must consider all of the mitigating circumstances, statutory or nonstatutory, proffered by Parks, and that it could consider any mitigating circumstances that it found from the evidence. . . ." ECF No. 178, p. 33 (quoting *Parks.*, 494 U.S. at 486-87). However, as the Nevada Supreme Court noted in the excerpt above, the trial court did instruct

Hogan's jury to consider mitigating evidence.  ECF No. 142-5, p. 66.  Moreover, no U.S.

Supreme Court case holds that a capital defendant's constitutional rights are violated by a trial

court instructing a jury to not be influenced by sympathy.  On that basis alone, this court must

defer to the Nevada Supreme Court's rejection of Ground Eleven(C).  *See Carey v. Musladin*,

549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the [issue

presented] here, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established

Federal law.'").

In Claim Eleven(D), Hogan challenges the trial court's refusal to give the following

instruction proposed by the defense:

> You are instructed there exists no reputable scientific evidence that capital
> punishment acts as a general deterent [sic] to crime.  You must decide what is a
> just punishment for Michael Ray Hogan without regard as to how his punishment
> might effect the crime rate or the amount of homicides committed by others, for
> to consider this would amount to improper speculation.

ECF No. 139, p. 204; Docket no. 7, Exhibit P, p.14-15.  Hogan argues that the instruction was

warranted because it "required the jury to perform an individualized assessment of the

appropriateness of the death penalty for Mr. Hogan, and focus on his culpability rather than

societal concerns."  ECF No. 178, p. 35 (citing *Gregg*, 428 U.S. at 189).  The Nevada Supreme

Court rejected this claim in deciding Hogan's direct appeal.  *See Hogan*, 732 P.2d at 424

(holding that such an instruction was not called for by any authority of which the court was

aware).

Hogan cites to no persuasive authority that the state supreme court's rejection of this

claim was contrary to, or an unreasonable application of, clearly established federal law, as

determined by the Supreme Court.  Claim Eleven(D) is without merit.

Claims Eleven(C-D) are denied.

### Claim Twenty-six

In Claim Twenty-six, Hogan alleges that is entitled to habeas relief based on the

cumulative effect of the constitutional violations alleged in his petition.  He has not

demonstrated, however, that multiple constitutional errors in concert prejudiced the outcome of

his state criminal proceeding.  *See Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) ("Because

we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible."). Claim Twenty-six is denied.

## IV. CONCLUSION

For the reasons set forth above, Hogan is not entitled to habeas relief.

*Certificate of Appealability*

Because this is a final order adverse to the petitioner, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

The COA standard is not high. Hogan must only "'sho[w] that reasonable jurists could debate'" the district court's resolution or that the issues are "'adequate to deserve encouragement to proceed further.'" *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc) (citations omitted). Having reviewed its determinations and rulings in adjudicating Hogan's petition, the court concludes that the *Slack* standard is met with respect to the court's resolution of Claim Two(H), above. The court further concludes that reasonable jurists could debate whether the procedural default of Hogan's ineffective assistance of trial counsel claims should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). See ECF No. 170, p. 13-14. The court therefore grants a certificate of appealability as to those issues. The court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Hogan's other

habeas claims.

**IT IS THEREFORE ORDERED** that petitioner's fourth amended petition for writ of habeas corpus (ECF No. 139) is DENIED. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is granted as to the court's resolution of the following two issues:

> Whether petitioner's constitutional right to effective assistance of counsel was violated because trial counsel failed to adequately investigate the legality and underlying factual circumstances of an Iowa manslaughter conviction that the State used as an aggravating circumstance.

> Whether the procedural default of Hogan's ineffective assistance of trial counsel claims should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012).

DATED: March 23, 2018.

_____
UNITED STATES DISTRICT JUDGE

33